**Peter CIACCIO, Plaintiff,**

v.

**NEW ORLEANS PUBLIC BELT RAILROAD and Lykes Brothers Steamship Co., Defendant.**

**Civ. A. No. 15477.**

United States District Court
E. D. Louisiana,
New Orleans Division.

June 7, 1968.

John J. Cummings, III, Robert K. Tracy, New Orleans, La., for plaintiff.

Charles W. Lane, III, of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant the City of New Orleans through the Public Belt Railroad Commission.

M. D. Yager, John A. Bolles, of Terriberry, Rault, Carroll, Yancy & Farrell, New Orleans, La., for Lykes Brothers Steamship Co.

COMISKEY, District Judge.

## MEMORANDUM OF REASONS

In 1964, Lykes Brothers Steamship Company maintained, as a part of its steamship operations, a stevedoring department to conduct the loading and unloading of its vessels in the port of New Orleans. Some cargoes carried aboard Lykes' vessels were transported to and from the Nashville Avenue Wharf by railroad cars. These cars, in turn, were moved between the wharf area and staging points in the city by New Orleans Public Belt Railroad Commission.

Plaintiff, a longshoreman employee of Lykes, was injured while moving a railroad car on the Nashville Avenue Wharf. He brought suit against the New Orleans Public Belt Railroad Commission and Lykes Brothers under the Federal Employers' Liability Act (FELA) and the Safety Appliance Act.

■ Defendant Lykes Brothers is moving for a summary judgment on the ground that it is not covered by FELA or the Safety Appliance Act. Both of these Acts are applicable only to common carriers by railroad. 45 U.S.C. § 1 et seq.; 45 U.S.C. § 51 et seq. There are two main attributes which characterize a common carrier. First, it carries persons and goods belonging to others for their benefit and for hire. Second, it must hold itself out as ready to engage to carry for persons generally and as willing to engage in the transportation of goods or persons for hire as a public employment. Those who do not hold themselves out as willing to serve the public indiscriminately are not common carriers. The distinctive characteristic of a common carrier is that it undertakes to carry for all people indifferently. Home Insurance Co. v. Riddell, 252 F.2d 1, 4 (5th Cir., 1958). But it is not enough to be a common carrier if an entity is to be sued under FELA or the Safety Appliance Act; it must be a common carrier *by railroad*. In Wells Fargo & Co. v. Taylor, 254 U.S. 175, 41 S.Ct. 93, 65 L.Ed. 205 (1919), and Jones v. New York Central Railroad Co., 182 F.2d 326 (6th Cir., 1950), it was held that Railway Express Agency, Inc., which is a common carrier, is nevertheless not a common carrier *by railroad* within the meaning of FELA. And the mere fact that an entity maintains a railroad facility does not automatically make it a common carrier by railroad. In Kelly v. General Electric Co., 110 F.Supp. 4 (E.D.Pa., 1953), aff'd 204 F.2d 692 (3rd Cir., 1953), cert. den., 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953), General Electric maintained within its plant area a system of internal trackage about two miles in length but was held not to be common carrier by railroad under FELA. The same conclusion was reached as to the Ford Motor Company in Tilson v. Ford Motor Co., 130 F.Supp. 676 (E.D.Mich., 1955).

■ The small rail system of Lykes Brothers Steamship Company does not cause it to be a common carrier by railroad. It is true that Lykes carries goods belonging to others for their benefit and for hire. But Lykes does not hold itself out to the public as ready to transport goods for hire *by rail*. Lykes does advertise that it is willing to transport goods *by water* for the public indiscriminately, and therefore this company is a common carrier by water. But there is absolutely no advertising that Lykes carries freight by rail. Those who do not hold themselves out as willing to serve the public indiscriminately by railroad are not common carriers by railroad, and Lykes has never held itself out to the public as willing to perform such rail services. Rather, this rail system is merely the means by which Lykes has elected to facilitate the loading and unloading of its vessels and to move cargo on and off the wharf. It would be a distortion of FELA and the Safety Appliance Act to include Lykes Brothers Steamship Company under their provisions as a common carrier by railroad.

But the plaintiff argues that this case falls under the rule of Lone Star Steel Co. v. McGee, 380 F.2d 640 (5th Cir., 1967), in which the Fifth Circuit Court of Appeals engrafted some qualifications upon the general rule pertaining to common carriers. In that case the Lone Star Steel Company owned extensive property within which it operated its main plant for the processing and production of steel and steel products from raw materials. Various industries maintained facilities within the Lone Star plant area, and their operations were integrated with the overall operation of Lone Star. Fourteen entities, which were independent of ownership or control by Lone Star, maintained facilities within the plant, and at least seven of these shipped and/or received commodities by

rail. Three subcontractors engaged in construction work for Lone Star in its plant received some material by rail. In addition, 66 prime contractors who furnished their own labor, material, and equipment received their supplies in part by rail.

Within its plant area Lone Star had a complex system of rail trackage covering several miles. It owned eight diesel electric locomotives and 94 railroad cars. It had 57 employees performing duties in connection with its railroad operation. This railway system of Lone Star was connected to the main line of the Texas and Northern Railway Company (T & N), which track extended from a point inside the Lone Star plant complex to an interchange yard near the junction of its rail facilities with those of the Louisiana & Arkansas Railway Company. T & N performed rail service for Lone Star, for companies located within the Lone Star plant area, and for companies outside the Lone Star plant at various locations along its line. Lone Star virtually owned the T & N Railway Company, holding 3308 of the 3313 shares of its common capital stock, and during a ten year period received $2,000,000 in dividends.

Lone Star was sued by an injured employee under FELA and the Safety Appliance Act, but denied that it was a common carrier by railroad under these acts. But the Fifth Circuit held that Lone Star was a common carrier by railroad and laid down these guidelines:

"[V]arious considerations are of prime importance in determining whether a particular entity is a common carrier. First—actual performance of rail service, second—the service being performed is part of the total rail service contracted for by a member of the public, third—the entity is performing as part of a system of interstate rail transporation by virtue of common ownership between itself and a railroad or by a contractual relationship with a railroad, and hence such entity is deemed to be holding itself out to the public, and fourth—remuneration for the services performed is received in some manner, such as a fixed charge from a railroad or by a percent of the profits from a railroad." 380 F.2d at 647.

The court easily found that Lone Star performed rail services and that such services were a part of the total rail transportation contracted for by the industries on its plant site. The third requirement was satisfied because there was a common ownership of both companies, and the fourth consideration was met because the dividends Lone Star received from T & N constituted remuneration for the rail services rendered:

"And finally, even though it does not receive money in the form of direct transportation charges from T & N or from the industries serviced, it is for all practical purposes the sole owner of T & N. It is closely allied with T & N, their operations are interwoven, and therefore it receives in the form of dividends a part of the rate charged the industries by T & N." 380 F.2d at 647.

But surely, the modest rail system used by Lykes to load and unload its vessels cannot be compared to the vast rail complex operated by Lone Star Steel Company. And of more importance is the fact that there is no possible way that Lykes can be said to have satisfied the third consideration listed by the court in the *Lone Star* case: "third— the entity is performing as part of a system of interstate rail transportation by virtue of *common ownership* between itself and a railroad or by a *contractual relationship* with a railroad, and hence such entity is deemed to be holding itself out to the public * * *" 380 F.2d at 647. (Emphasis added.) There is no allegation that Lykes Brothers Steamship Company and the New Orleans Public Belt Railroad Commission are under common ownership, and it is undisputed that there is no contractual relationship between Lykes and the railroad. Therefore, Lykes cannot be deemed to be holding itself out to the public as a common carrier by rail within the

meaning of the third consideration set down by the Fifth Circuit in the Lone Star case.

For the foregoing reasons it is ordered that the motion of defendant Lykes Brothers Steamship Company, Inc. for a summary judgment be granted.