Peter Bruce MAHFOOD,
Plaintiff-Appellant,

v.

CONTINENTAL GRAIN COMPANY and
ABC Insurance Company,
Defendants-Appellees.

No. 83–3242
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 3, 1983.

John M. Gallagher, Jr., New Orleans, La., for plaintiff-appellant.

Adams & Reese, Richard B. Eason, II, New Orleans, La., for defendants-appellees.

Before REAVLEY, RANDALL and WILLIAMS, Circuit Judges.

PER CURIAM:

This appeal is from a summary judgment rendered in an action brought in the United States District Court for the Eastern District of Louisiana against Continental Grain Company (Continental) by Peter Mahfood to recover damages for personal injuries under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1976). The district court granted Continental's motion for summary judgment on the basis that it was not a common carrier railroad as contemplated by 45 U.S.C. § 51. Mahfood contends that the district court improperly concluded that there was no genuine issue of material fact as to whether Continental is a common carrier railroad under 45 U.S.C. § 51. For the reasons stated below, we affirm the judgment of the district court.

## I. FACTUAL BACKGROUND.

Petitioner Mahfood was employed as a mechanic by Continental. His duties included repair work on railroad locomotives owned by Continental. Mahfood alleges that on or about May 9, 1982, he was repairing a hydraulic dump truck in the raised position when the bed of the truck collapsed, pinning him between the bed and frame. Mahfood filed suit against Continental to recover damages under 45 U.S.C. § 51,[1] contending that Continental's negli-

---

1. Section 51 reads:

Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury . . . resulting . . . from the negligence of . . . such carrier . . . .

45 U.S.C. § 51 (1976).

gence was the proximate cause of his injuries.

Continental has several thousand feet of railroad track within its grain export facility and uses two locomotives and a four man crew to operate the railroad. Continental maintains that it does not hold its railroad out for hire to the public, nor does it advertise. Furthermore, it denies that it performs any railroad service for others. Continental has a lease agreement with the Missouri-Pacific Railroad Company (Missouri-Pacific) whereby the latter delivers railroad cars to the former's grain export facility. After the cars are unloaded at Continental's export facility, Missouri-Pacific removes these cars from the facility. Under this agreement, Continental's railroad is prohibited from leaving the grounds of the export facility except for one 1,500 foot segment of track owned by Missouri-Pacific. This section of track is used by Continental for storage use only.

A provision of the lease arrangement between Continental and Missouri-Pacific provides that Continental will construct certain safety equipment and facilities for that part of the Missouri-Pacific line leased by Continental. Missouri-Pacific is to reimburse Continental for the cost of such construction through revenue received for carloads hauled over that section of the track.

Mahfood contends that Continental's railroad is an integral part of an interstate carrier operation whereby grain is carried by rail to the export facility and then to Continental's wharves for shipping by water to interstate destinations. Continental responds that it is not a common carrier operating by railroad because its railroad is used exclusively for its own purposes, no charges are made by reason of rail transportation, and because it does not hold itself out for public hire or advertise its services.

## II. SUMMARY JUDGMENT.

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The burden of showing that no material fact is in dispute is upon the party seeking summary judgment, and every reasonable inference arising from the record must be resolved in favor of the party opposing the motion. *Penton v. Crown Zellerbach Corp.,* 699 F.2d 737, 741 (5th Cir.1983); *Murphy v. Georgia-Pacific Corp.,* 628 F.2d 862, 866 (5th Cir.1980). The district court concluded that Mahfood had failed to present any genuine issue of material fact showing Continental to be a "common carrier by railroad" under 45 U.S.C. § 51. Our review of the pleadings, affidavits and answers to interrogatories convinces us that the district court correctly evaluated the evidence in this case and that its grant of summary judgment was proper.

## III. THE *McGEE* TEST.

■ A "common carrier by railroad," as used in FELA, was held in *Wells Fargo & Co. v. Taylor,* 254 U.S. 175, 187, 41 S.Ct. 93, 98, 65 L.Ed. 170 (1920), to mean "one who operates a railroad as a means of carrying for the public [and] . . . [t]his view . . . is in accord with the ordinary acceptation of the words . . . ." In *Lone Star Steel Co. v. McGee,* 380 F.2d 640, 647 (5th Cir.), *cert. denied,* 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967),[2] we enumerated four considerations of prime importance in determining whether a particular entity is a "common carrier by railroad":

First—actual performance of rail service, second—the service being performed is

---

**2.** The Lone Star Steel Company operated an extensive rail system within its industrial properties. It owned eight locomotives, 94 cars of rolling stock, six railroad cranes, and employed 57 persons in traditional railroad classifications. In addition to the Lone Star plant, fourteen independent companies maintained facilities within the Lone Star complex. Rail service to the complex was provided by the T & N railroad which was a subsidiary of Lone Star.

Under its line-haul rates, T & N was obligated to pick up and deliver cars for industries within the complex, at sidings located within the complex. For certain industries, Lone Star would pick up and deliver freight between sidings and the classification yard, thereby using its own railroad equipment to fulfill T & N's obligation. Lone Star received over $2,000,000 in dividends over 10 years as owner of all but five shares of T & N's common stock.

part of the total rail service contracted for by a member of the public, third—the entity is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad or by a contractual relationship with a railroad, and hence such entity is deemed to be holding itself out to the public, and fourth—remuneration for the services performed is received in some manner, such as a fixed charge from a railroad or by a percent of the profits from a railroad.

Thus, in order to determine whether Continental is a common carrier railroad we must determine if its railroad operation meets each of the four tests of *McGee*.

■ In conducting its business of shipping grain by sea from its grain facilities to other destinations, Continental undoubtedly performs some railroad functions. But this internal transportation of grain by Continental from the unloading station is not being performed as part of total rail services Missouri-Pacific (or Continental) has contracted with the public to perform. Nor is Continental's railroad operation an integral link of Missouri-Pacific's total rail operation. Finally, Continental does not receive either directly or indirectly remuneration for its rail services through fixed charges or through dividends from a subsidiary for which it fulfills rail services.

A number of factually similar cases involving this issue buttress our determination that Continental is not a common carrier railroad. In *Ciaccio v. New Orleans Public Belt Railroad,* 285 F.Supp. 373 (E.D.La. 1968), the defendant steamship company transported cargo between its wharf and staging points in New Orleans. Although the defendant was a common carrier, it did not "hold itself out to the public as ready to transport goods for hire *by rail.*" *Id.* at 375 (emphasis in original). This rail system was merely the means by which the defendant elected to facilitate the loading and unloading of its vessels and the moving of cargo to and from the wharf.

Although not cited by either party to this case, we held in *McCrea v. Harris County Houston Ship Channel Navigation District,* 423 F.2d 605 (5th Cir.1970), that the use of rail cars by a navigation district for the unloading process at its grain storage facility did not result in it being a "common carrier by railroad" within the purview of 45 U.S.C. § 51. In *McCrea* the Harris County Houston Ship Channel Navigation District maintained rail cars and trackage at its grain storage facilities. The primary function of these railroad cars was the conveyance of grain from a siding where it was delivered by railroad to grain elevators for eventual conveyance to wharfside. The Navigation District did not perform part of the total rail service contracted for by the railroads delivering the grain; rather, its use of a railroad was incidental to its movement of grain to water.[3]

Mahfood contends that because Continental uses one 1,500 foot segment of Missouri-Pacific trackage for storage, this gives Continental the status of a common carrier. In support, Mahfood points to *New Orleans Terminal Co. v. Spencer,* 366 F.2d 160 (5th Cir.1966), where the issue before us was whether certain trackage could be regulated as a "railroad" by the Interstate Commerce Commission. In *Spencer* we found

**3.** Another case factually similar to the case at bar is *Aho v. Erie Mining Co.,* 466 F.2d 539 (8th Cir.1972). In *Aho* the Erie Mining Company operated a railroad transporting taconite pellets from its plant to its dock and shipping facilities, a distance of approximately 75 miles. The pellets were then shipped via lake carrier to ports in other states. The plaintiff contended that Erie's operation of a railroad 75 miles outside its own enclave on its own tracks as a link in a chain of interstate commerce, albeit limited to its own products, constituted action as a common carrier.

It was undisputed that the railroad carried only Erie's products, that the railroad performed no direct services for other industries or carriers, that the railroad did not hold itself out as willing to act as a common carrier, and that the railroad made no charge for operating its equipment. Applying the *McGee* test, the court found the Erie railroad not to be within the definition of a "common carrier by railroad" under 45 U.S.C. § 51.

that the use of tracks for the storage of cars does not make them any less lines of the railroad since this part of the track was used to connect railroad for the movement of freight. 366 F.2d at 166. *Spencer* is inapposite to the case at hand; trackage used by Continental is not a connection between railroads as in *Spencer.* Moreover, the present case concerns not the definition of a "railroad" but of a "common carrier by railroad."

Mahfood also asserts that Missouri-Pacific uses trackage and equipment of Continental in order to perform total railroad services for the general public, and that one lease provision designates Missouri-Pacific as "an agent of" Continental. A review of this lease provision indicates it has nothing to do with the creation of an agency relationship. Mahfood's allegation that Missouri-Pacific uses Continental's railroad to perform services for the general public is based partly on photographs purportedly showing railroad cars of three different companies present upon Continental's trackage. But because Mahfood alleges no other facts nor offers any other evidence as to who these cars belong to or as to what their purpose is, these photographs fail to demonstrate a dispute over any material factual issue which bears on Continental's common carrier status.[4]

Mahfood further avers that another lease provision provides that Continental performs rail services for other companies. This assertion is not supported by the record. The lease contains no such provision.

Mahfood also draws our attention to cases in which terminal facilities and stockyards have been held to be common carrier railroads.[5] These cases are easily distinguished from the one at hand; each involved carriers who received direct remuneration for their services and were part of the total rail services that a common carrier railroad was obligated to perform for a member of the public.[6]

Finally, Mahfood urges us to hold that because Continental and Missouri-Pacific have entered into agreements with regard to the construction of safety equipment and switching track, the third prong of the *McGee* test is satisfied. We are not persuaded that a mere agreement as to track upkeep demonstrates that Continental is performing as part of a "system of interstate rail transportation" as interpreted by *McGee* and its progeny. Indeed, the record does not reflect that "the operations of the two are highly integrated and mutually dependent," as was found in *McGee.* See *McGee, supra,* at 648.

## IV. CONCLUSION.

After consideration of the circumstances of Continental's operation in light of *McGee,* we are convinced that there is no genuine issue of material fact as to whether Continental is a "common carrier by railroad," as contemplated by 45 U.S.C. § 51. While Mahfood has alleged certain facts that he believes makes Continental a "common carrier by railroad," these allegations alone are not sufficient to raise a genuine issue of material fact. There must be a sufficient quantum of proof to carry an issue of material fact to the jury. *Aladdin Oil Co. v. Texaco, Inc.,* 603 F.2d 1107, 1117 (5th Cir. 1979). Mahfood has failed to present such proof. Accordingly, the judgment of the district court is AFFIRMED.

---

**4.** Mahfood's affidavit says the three photographs show non-Continental railroad cars on Continental's railroad track. However, close examination of one of these photographs ("number 9") shows that the car bears the legend: "Leased to Continental Grain Company." This might lead us to speculate that this car may be that of Continental's used in its own operations.

**5.** *United States v. Brooklyn Eastern District Terminal,* 249 U.S. 296, 39 S.Ct. 283, 63 L.Ed.

613 (1919); *Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911) (terminal facilities); *Union Stock Yard & Transit Co. v. United States,* 169 F. 404 (8th Cir.1909) (stockyard).

**6.** For further discussion of these cases with regard to the "common carrier" requirement, see *Lone Star Steel Co. v. McGee, supra,* at 646–47.