JOHN SCHUTZENHOFER *et al.*, Plaintiff-Appellee, v. GRANITE CITY STEEL, Defendant-Appellant.

Fifth District   No. 5—84—0342

Opinion filed May 16, 1985.

Pope & Driemeyer, of Belleville (James R. Parham and Allan Goodloe, Jr., of counsel), for appellant.

William S. Beatty, of Law Offices of William W. Schooley, of Granite City, for appellees.

JUSTICE KARNS delivered the opinion of the court:

This is a consolidated appeal from judgments entered in the circuit court of Madison County in separate actions brought by plaintiffs John Schutzenhofer and Steven Manley, each of whom was injured in the course of their employment with defendant Granite City Steel. In both actions it was asserted that defendant was a common carrier by rail in interstate commerce, and, therefore, the injuries were compensable under the provisions of the Federal Employers' Liability Act (45 U.S.C. sec. 51 (1976)). Schutzenhofer's claim was additionally based upon provisions of the Federal Safety Appliance Act (45 U.S.C. secs. 4, 8 (1970)). The cases were heard together in a bench trial, each resulting in awards of money damages to the plaintiffs.

The Schutzenhofer case has been before this court before. In October 1979, a partial summary judgment was entered in favor of Schutzenhofer by the trial court ruling that at the time of the occurrence the defendant was a common carrier by rail within the meaning of the Federal Employers' Liability Act. Schutzenhofer subsequently prevailed in a jury trial, and the defendant appealed, presenting the question of its status as a common carrier by rail. The appeal was dismissed in this court on the grounds that the question had not been preserved for review. (*Schutzenhofer v. Granite City Steel Co.* (1981), 101 Ill. App. 3d 683, 428 N.E.2d 655.) The supreme court reversed the appellate and circuit courts, holding that the trial court erred in entering summary judgment for Schutzenhofer because it resolved a factual issue without granting or denying all or part of the relief sought, in violation of the procedural rule governing summary judgments. (*Schutzenhofer v. Granite City Steel Co.* (1982), 93 Ill. 2d 208, 443 N.E.2d 563; Ill. Rev. Stat. 1979, ch. 110, par. 57.) The supreme court remanded the case for a new trial, from which the instant appeal arises. The question posed again by defendant is whether the undisputed facts adduced at trial fail to establish that Granite City Steel is a common carrier by rail engaged in interstate commerce.

■■ The facts pertinent to the issue raised were amply set forth in the earlier opinions, and the parties agree that no appreciable change occurred upon retrial. A synopsis of the relevant facts is provided here.

Defendant is a manufacturer and processor of steel at a large industrial complex in Granite City. It owns approximately 14 locomotives, 509 railroad cars and 55 miles of track, and employs approximately 250 people in the plant's rail operations. The railroad system is located entirely within defendant's property and operates within and between two areas of the plant divided geographically by a public road. In addition to the rail operations conducted by Granite City Steel as part of its

steel-producing activities, the defendant performs switching services for three satellite industries known as Luria Brothers & Company, Inc. (Luria Brothers), International Mill Services, Inc. (IMS), and Air Products and Chemicals (Air Products). Luria Brothers and IMS lease their property from defendant and are located within Granite City Steel's boundaries. Each of the satellite industries provides a service to Granite City Steel which is integral to defendant's operations, and each has shipped and received products in interstate commerce by rail which were handled over tracks owned by defendant.

The switching services were provided by Granite City Steel pursuant to separate agreements with Terminal Railroad Association of St. Louis (TRRA) and Illinois Terminal Railroad Company (ITRR). These agreements, executed in 1957, provided that Granite City Steel was to act as the agent of the railroads in switching cars from a designated interchange point called Block F yard onto the sidings of the three satellite industries, for a compensation rate of $3.75 per loaded car. By written agreements dated March 26 and April 1, 1975, the agreements of 1957 were cancelled and the new contract provided that as of March 1, 1975, defendant was no longer the agent for TRRA or ITRR in the switching services performed for the satellite industries. A 1965 agreement between defendant and TRRA provided that Granite City Steel would switch cars over tracks on a right-of-way owned by the railroad and leased by defendant, for any industry located adjacent to 16th Street, for a compensation of $4.50 per loaded car. On March 26, 1975, this agreement was modified to relieve the defendant of its obligation to perform switching services and the compensation provision was deleted.

Shortly after the 1975 agreements were executed, the defendant entered into separate agreements with Luria Brothers, IMS, and Air Products. In essence, these agreements provided that defendant was acting as a private carrier when switching cars from Block F yard onto the sidings of the satellite industries, and that defendant would no longer receive compensation for the switching services. Each of these agreements also incorporated the St. Louis-East St. Louis Terminal Lines Switch Tariff 1-F (ICC 5187), which provided that the obligation of TRRA and ITRR was restricted to the pick-up and delivery of cars at the Block F yard.

Granite City Steel's railroad is not regulated outside of the agreements described above, which were in effect at the time the injuries were sustained by the plaintiffs. The defendant does not publish a tariff. It does not operate pursuant to a certificate of public convenience and necessity granted by the Illinois Commerce Commission or the In-

terstate Commerce Commission, nor is it regulated by any governmental agency.

Under these facts, the trial court concluded that "by virtue of the nature, type, and scope of its railroad operations," the defendant was a common carrier by rail. In analyzing Granite City Steel's status, the court relied upon the test articulated in *Lone Star Steel Co. v. McGee* (5th Cir. 1967), 380 F.2d 640. Both sides have argued the issue at bar utilizing the *McGee* case, which is factually analogous and offers a systematic approach in the determination of common carrier status. Our understanding of the *McGee* test and its application to the instant facts compels us to conclude that the trial court's finding was contrary to law, and, accordingly, we reverse.

As the instant defendant, the Lone Star Steel Company was a manufacturer of steel and related products which operated a rail system within its own plant. Various independent companies whose operations were closely integrated with Lone Star's business maintained their facilities in the Lone Star plant complex. The Texas and Northern Railway Company (T&N) provided railway service to the complex by way of line-haul freight movement. Lone Star handled some switching services on the plant premises and also provided rail services for which T&N was obliged to the other companies operating within the complex. As in the instant case, Lone Star charged no fees for the rail services nor did it publish any tariffs concerning rail movements.

After considering numerous decisions that considered the question of common carrier status, the Fifth Circuit Court of Appeals articulated a four-prong test and determined that Lone Star was a common carrier by rail within the meaning of FELA. The *McGee* test is divided into four primary considerations:

> (1) actual performance of rail service
>
> (2) the service being performed is part of the total rail service contracted for by a member of the public
>
> (3) the entity is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad or by a contractual relationship with a railroad, and hence such entity is deemed to be holding itself out to the public.
>
> (4) remuneration for the services performed is received in some manner, such as a fixed charge from a railroad or by a percent of the profits from a railroad. 380 F.2d 640, 647.

In the case at bar, the plaintiff argues that a *McGee* analysis of the circumstances surrounding Granite City Steel's internal railway operations requires the same result reached as to Lone Star. Initially, it is

undisputed that Granite City Steel actually performs rail service, and the service is being performed for members of the public (the satellites). The defendant contends that the absence of a contractual obligation to perform switching services on behalf of the Terminal Railroad removes Granite City Steel from common-carrier status under the second and third tests of *McGee*. Plaintiff asserts, and the trial court agreed, that the 1975 modification agreements were of no consequence in determining common-carrier status because the services supplied pursuant to the 1957 contracts remained virtually unchanged for over 25 years. It is apparent that the trial court was influenced by plaintiff's assertion that the 1975 contracts should not be validated insofar as the agreements relieved Granite City Steel from liability under FELA. The plaintiffs argued in their brief that the 1975 contracts are voided by section 55 of the FELA, which provides that "any contract *** the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created in this chapter shall to that extent be void." (45 U.S.C. sec. 55 (1976).) Even if we were to conclude that Granite City Steel was a common carrier by rail prior to 1975, and we need not decide that here, we would reject plaintiff's interpretation of section 55. The legislative history indicates that section 55 was enacted to prevent a railroad from shielding itself from FELA coverage by contracting with its employee to limit or relieve the railroad's liability. (*Bay v. Western Pacific R.R. Co.* (9th Cir. 1979), 595 F.2d 514, 516.) The provision does not apply to the type of contracts involved in the instant case.

Similarly to Lone Star, Granite City Steel is providing a part of the total rail service which other public railroads are obligated to perform, and therefore, the plaintiff argues, Granite City Steel must be deemed holding itself out to the public within the meaning of a common carrier. We disagree. In our view the facts of the instant case are at odds with the fourth essential *McGee* consideration. While remuneration in terms of direct monetary compensation is not required to meet the *McGee* test (380 F.2d 640, 647), a direct economic benefit is crucial. The most persuasive factor in the judicial determination of Lone Star's common carrier status is absent in the instant case. Lone Star was not only closely allied and mutually dependent with T&N, it owned all of the stock of the railroad but for five shares. Lone Star received regular substantial dividends from T&N's profits, part of which were amassed from the line-haul rates charged by T&N in the Lone Star complex' railway system. For all intents and purposes, Lone Star and T&N jointly operated the railroad within the plant complex. Thus Lone Star received a direct and sizeable economic benefit even though it was not

contractually entitled to receive payments from the industries served in the complex.

Plaintiff has attempted to persuade us that because Granite City Steel has convenienced itself by continuing rail service within the plant without disruption from outside carriers, and is therefore enabled to conduct business efficiently in close relationship to the satellite industries served, it therefore received an indirect economic benefit sufficient to establish the fourth consideration of *McGee*. We reject this contention. Lone Star enjoyed the same convenience and economic advantage, yet it is apparent in the Federal court's analysis that the interdependent and very close connection between T&N and Lone Star was the determinative point in the court's decision.

Furthermore, we agree with defendant that the *McGee* case represents an exception to the usual holding that a company which operates an intraplant rail system is considered a private carrier not subject to liability under FELA or the Federal Safety Appliance Act. See *Mahfood v. Continental Grain Co.* (5th Cir. 1983), 718 F.2d 779; *Aho v. Erie Mining Co.* (8th Cir. 1972), 466 F.2d 539; *Pickney v. Oro Dam Constructors* (9th Cir. 1971), 441 F.2d 806; *McCrea v. Harris County Houston Ship Channel Navigation District* (5th Cir. 1970), 423 F.2d 605.

■ Our holding comports with the traditional view of the common carrier concept, which differentiates between private and common carriers by characterizing the latter as one who is engaged in the business of transportation for hire and who undertakes to provide its service to the public generally. (*National Association of Regulatory Utility Commissioners v. Federal Communications Com.* (D.C. Cir. 1976), 525 F.2d 630, 640-41; *Kelly v. General Electric Co.* (E.D. Pa. 1953), 110 F. Supp. 4, *aff'd* (3d Cir. 1953), 204 F.2d 692, *cert. denied* (1953), 346 U.S. 886, 98 L. Ed. 390, 74 S. Ct. 137.) The record patently demonstrates that Granite City Steel does not have the traditional characteristics of a common carrier.

The evidence adduced at trial was comprehensive and complete. No useful purpose would be served by retrial of the issues. The judgments of the circuit court of Madison County are reversed, and the court is directed to enter judgment in favor of the defendant in each case.

Reversed with directions.

JONES, P.J., and KASSERMAN, J., concur.