WARD, Judge.
Henry Johnson filed suit pursuant to the Federal Employers Liability Act (“FELA”), against his employer, Turner Marine Bulk (“Turner”), for work-related injuries arising from two separate accidents. Johnson alleged that Turner was engaged as a “linking common carrier” in furtherance of interstate commerce and that it linked various carriers by rail and sea and that it owned and operated railroad engines and tracks, as well as ship-loading facilities connected to rail lines. Johnson also alleges that as an employee of Turner he was engaged in operating locomotives and in loading and unloading rail cars, all of which was in furtherance of interstate commerce.
Turner moved for summary judgment on the basis that it was not a common carrier *14 by rail engaged in interstate commerce within the meaning of FELA. In support of its motion, Turner submitted the affidavit of J.R. McCullough, its Industrial Relations Manager, who averred that Turner was in the business of transferring cargo between various modes of transportation, primarily between ships, barges, and rail cars. He further stated that Turner received rail cars at its facility from the Public Belt Railroad and that Turner’s employees worked at the Turner facility only and did no work on the Public Belt lines. Turner’s employees moved loaded rail cars to a “dump site” where the cargo was unloaded onto conveyors for loading onto other forms of transportation. When empty rail ears were brought into the facility, Turner’s employees moved them into place for loading. Turner’s employees used switch engines to move these rail cars within the facility on railroad tracks. Once the rail cars were either loaded or unloaded, they were moved to a storage track in the facility from which they were removed by Public Belt. McCullough further averred that Turner was not a railroad company, did not hold itself out to the public as a railroad, did not advertise to the public as a railroad, and was not available to the public for hire as a railroad. He also stated that Turner’s services were not part of the services contracted for between Public Belt and Public Belt’s customers and that Turner was not paid any portion of the transportation fees received by Public Belt and was not paid by Public Belt or any other railroad. In a second affidavit, McCullough further averred that Turner had not filed any documents with the Interstate Commerce Commission or the Public Service Commission for purposes of seeking approval to operate a railroad and that Turner did not have a tariff for the carriage of goods by railroad. Turner employees were not members of railroad unions and were covered by Longshore and Harbor Workers’ Compensation Act.
Turner also submitted the affidavit of Donald Childress, Secretary-Treasurer and Auditor for the Public Belt Railroad, in support of its motion. Childress outlined the regular business and activities of the Public Belt Railroad; and, he stated that the business of Public Belt was the interchanging of rail cars received from six interstate line-haul railroads to end user industries in the New Orleans area to which the railroads have instructed the rail cars be delivered. Childress stated that pursuant to a contract, Public Belt spotted rail cars at Turner’s facility by leaving them in the “New Yard,” which was leased by Turner from the Port Commission, and that Turner would notify it to pull or pick up rail cars out of the “Old Yard,” which tracks were owned by Public-Belt but were operated and maintained by Turner pursuant to an agreement with the Port Commission.
An excerpt from the deposition of Johnson, submitted in support of the motion, discussed the operation of the Turner facility and Johnson’s job with Turner regarding the movement of rail cars received from Public Belt. Johnson testified that Public Belt would bring the rail ears to the Turner facility and that he and other Turner employees would use a switch engine to move the rail cars for unloading at the dump site. The unloaded cargo would then be put onto conveyor belts and loaded onto ships or trucks.
In opposing the motion for summary judgment, Johnson pointed to contradictions between McCullough’s affidavit and his deposition testimony regarding his knowledge of Turner’s business and operations, that Johnson performed traditional railroad work, and that Turner was a vital link in the chain of interstate commerce.
The trial court denied Turner’s motion for summary judgment on the basis that the activities participated in by Turner encompassed those of a railroad and that the goods shipped to Turner stayed in interstate commerce.
Turner argues that the mere fact that it uses railroad equipment to facilitate the movement of cargo in interstate commerce is not enough. We agree. 45 U.S.C.A. § 51 provides that “every common carrier by railroad while engaging in” interstate or foreign commerce shall be liable in damages to any person suffering injury while *15 he is employed by such carrier in such commerce.
In Lone Star Steel Company v. McGee, 380 F.2d 640 (5th Cir.1967), cert. den. 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967), the Fifth Circuit set out four prime considerations to be used in determining whether a defendant was a common carrier covered by FELA or was instead a private carrier. First, there must be actual performance of rail service. Second, the service being performed is part of the total rail service contracted for by a member of the public. Third, the entity is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad, or by a contractual relationship with a railroad, and hence such entity is deemed to be holding itself out to the public. Fourth, remuneration for the services performed is received in some manner, such as a fixed charge from a railroad or by a percent of the profits from the railroads.
In that case, Lone Star operated a steel plant within which was a system of rail trackage covering several miles, and owned eight locomotives, numerous rail cars, and several railroad cranes. T & N Railroad, which was a common carrier and of which Lone Star owned most of its shares, operated a main line out of the plant and performed rail service for Lone Star, several independent entities located within the Lone Star plant, and companies outside the Lone Star plant. Lone Star also performed rail services for the independent entities located in the plant, but it did not make direct charges by way of tariffs or receive any direct freight revenues. T & N’s freight charge included charges for services performed by Lone Star. The Fifth Circuit held that Lone Star was a common carrier by rail because it was an integral part of T & N’s interstate rail system, it practically owned T & N, and its operations were interwoven with those of T & N. The court found that Lone Star and T & N were highly integrated and mutually dependent.
In Ciaccio v. New Orleans Public Belt Railroad, 285 F.Supp. 373 (E.D.La.1968), the court applied the Lone Star criteria to conclude that Lykes Brothers, which owned and operated a rail system to move cargo to and from its ships, was not a common carrier within the meaning of FELA. Lykes did not hold itself out to the public as ready to transport goods by rail, and the rail system was merely the means by which Lykes had elected to facilitate the loading and unloading of its vessels. The court stated that it would be a “distortion” of FELA to include Lykes under its provisions as a common carrier.
In Mahfood v. Continental Grain Co., 718 F.2d 779 (5th Cir.1983), the plaintiff did repair work on locomotives owned by Continental Grain, his employer. Continental had several thousand feet of track within its grain export facility and used two locomotives to operate the railroad. Continental had a lease agreement with Missouri Pacific Railroad whereby the latter delivered rail cars to the export facility for unloading. After the cars were unloaded, Missouri-Pacific removed the cars from the facility. Continental’s railroad was prohibited from leaving its facility except for a small section of Missouri-Pacific’s track which Continental used for storage only. Continental did not hold itself out to the public for hire. The district court granted Continental’s motion for summary judgment; and, the Fifth Circuit affirmed because under Lone Star, Continental could not be deemed a common carrier.
In Kieronski v. Wyandotte Terminal R. Co., 806 F.2d 107 (6th Cir.1986), the only case cited by Johnson in his opposition to Turner’s writ application, Wyandotte’s railroad tracks were originally on two parcels of land owned by its parent company BASF. Wyandotte’s operations were almost entirely concerned with in-plant switching for BASF. At one parcel, the tracks were connected to and Wyandotte received cars from the Detroit, Toledo & Ironton Railroad. At the other parcel, the tracks were connected to and Wyandotte received cars from Consolidated Rail. Wyandotte also had trackage rights between the two parcels to perform switching duties at both locations. The district court held that Wyandotte was not a common carrier under FELA, and the Sixth Circuit *16 affirmed. The court discussed Lone Star but did not apply its considerations as a four-part test. Rather, the court looked at the various categories into which carriers had been divided. The first category consisted of in-plant facilities which were not common carriers merely by being connected to a common carrier. The second category was private carriers who haul for others but only pursuant to individual contracts entered into separately with each customer. The third category was common carriers which linked two or more common carriers, thereby becoming a vital part of the common carrier system. The fourth category was that of the facility in Lone Star which had characteristics of both an in-plant facility and a linking common carrier. The court concluded that Wyandotte looked most like a private carrier even though it was connected to two common carriers. Wyandotte acted in no way to link them or to perform functions for which the common carrier’s customers had contracted.
In Sullivan v. Scoular Grain Co. of Utah, 930 F.2d 798 (10th Cir.1991), Scoular Grain Company, a grain storage company, and Freeport Center, a warehouse lessor, formed a joint venture for grain storage adjacent to railroad tracks. The venture moved loaded grain cars to its warehouses by using a Trackmobile, a diesel vehicle that propelled the grain cars toward a location for unloading. The joint venture, Scoular, and Freeport successfully moved for summary judgment, and the Tenth Circuit affirmed, finding that none could be considered a common carrier under FELA. Even though the defendants owned or leased miles of railroad tracks, hundreds of railroad cars, and several switch engines, Trackmobiles, and tractors, they were not a “going railroad” that carried for the public.
In McCrea v. Harris County Houston Ship Channel Nav. Dist., 423 F.2d 605 (5th Cir.1970), a state navigation district operated terminal facilities at the Port of Houston. A belt railroad system linked the navigation district to various rail carriers. The belt railroad leased property, including rights-of-way, trackage, switches, and yards, from the navigation district. The navigation district maintained railroad trackage at two facilities, a bulk material handling plant and a public grain elevator, which primarily functioned iri the unloading of incoming cargo, temporary storage, and conveyance of cargo to vessels for loading. The belt railroad delivered loaded cars to the navigation district facility where the district's employees would move the cars for unloading by dumpers. The Fifth Circuit held that under the Lone Star criteria, the navigation district was not a common carrier by rail. The movement of the rail cars over a few hundred feet of track incident to the unloading process was not a rail service and was not part of the total rail service contracted for by the public. Independent arrangements had to be made with the district and an additional charge paid to have the rail cars moved to the dumping mechanism and unloaded there.
In his trial court opposition, Johnson cited United States v. Brooklyn Eastern District Terminal, 249 U.S. 296, 39 S.Ct. 283, 63 L.Ed. 613 (1918), in which the defendant received rail cars from ten different railroads for transport to docks and vice versa. The defendant was paid for its services by either the railroad or the steamship company and not by the shipper or consignee of the cargo. The defendant did not hold itself out to the public as a common carrier and had no tariff on file with the I.C.C. The United States Supreme Court held that the defendant was a common carrier by rail based on its relationship with the various railroads and because its services were public in nature and of a kind ordinarily performed by a common carrier at its own station.
Johnson also cited United States v. State of California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567 (1936), which involved a state-owned belt railroad. The Supreme Court held that it was a common carrier because it extended into numerous wharves, directly served 175 industrial plants, was connected with one interstate railroad, and had links with three other interstate rail carriers. Its services were of a public character.
*17 The trial court incorrectly focused on whether Turner’s activities were connected with interstate commerce when the cited cases focus on the alleged common carrier’s activities as a railroad. Turner should not be considered a common carrier by rail for the same reasons that Lykes Brothers was not in Ciaccio, supra, a case which is virtually indistinguishable from the present one. Moreover, Turner does not meet the four considerations set forth in Lone Star in that it does not hold itself out as a railroad, is not owned by nor does it have ownership of a railroad, and it is not paid by a railroad for its services.
Accordingly, we reverse the trial court’s ruling and grant summary judgment in favor of Turner Marine Bulk.
WRIT GRANTED; TRIAL COURT REVERSED.