## WELLS FARGO AND COMPANY *v.* TAYLOR.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 41. Argued December 19, 1919.—Decided December 6, 1920.

1. Where the District Court sustains a bill in equity against a demurrer and upon final hearing renders a decree for the plaintiff, a reversal ordered by the Circuit Court of Appeals purely because of an amendable deficiency of the bill and unaccompanied by any direction that the bill be dismissed or implication forbidding its amendment, leaves the District Court free to permit the amendment; and the fact that the Circuit Court of Appeals, in denying a petition for rehearing, refused to direct the allowance of the amendment signifies merely that it saw no occasion to control the District Court's discretion in the matter. P. 181.

2. The provision of the Judicial Code (§ 265, formerly Rev. Stats., § 720) forbidding any court of the United States to grant an injunction to stay proceedings in any court of a State, is intended to give effect to the principle of comity and to prevent unseemly interference with the orderly disposal of litigation in the state courts, but not to hamper the federal courts in the discharge of duties otherwise plainly cast upon them by the Constitution and by the laws of Congress. P. 182.

3. The inhibition does not forbid the federal courts to enjoin a party from collecting a judgment obtained in a state court where its enforcement would be contrary to recognized principles of equity and the standards of good conscience. P. 183. See headnote 6, *infra.*

4. An arrangement between a railroad company and an express company whereby, in consideration of stipulated payments, the former grants to the latter the exclusive privilege of conducting the express business over its line, and transports, by cars provided by it and attached to its passenger trains, the express matter and accompanying messengers of the latter, besides furnishing room in its stations for the express company's use, and under which the latter assumes all risk of damage to its property and express matter so transported and of injury to its agents and employees while engaged in its business on the trains or property of the railroad company, and agrees to indemnify that company against claims for damages suffered by

such agents or employees while so engaged—does not create a partnership relation but constitutes the business of the express company distinct from that of the railroad company, so that an employee of the express company, while employed as its messenger on an express car in course of transportation, cannot be treated as an employee of the railroad company for the purpose of applying the Employers' Liability Act. P. 186.

5. The Employers' Liability Act, applicable to "every common carrier by railroad," does not embrace an express company conducting its business under such an arrangement with a railroad company. P. 187.

6. An express company operating over a railroad under an agreement by which it assumed all risk of injury to its employees while engaged in its business on the trains of the railroad company and agreed to indemnify that company against such claims, employed a messenger who, as a condition to his employment, assented to this understanding and agreed on his part to assume all risk of injury incident to his employment, from whatever cause arising. The employee was injured by the negligence of the railroad company while in discharge of his duties to the express company, and recovered judgment against the railroad company in an action in a state court in which the express company was not a party and could not be heard. He was financially irresponsible. *Held*, that his contract was valid and bound him to the express company not to assert such a liability against either company, and that the express company was equitably entitled to enforce the obligation by a suit against him in the District Court (diverse citizenship being present) in which collection of the judgment should be enjoined. P. 188.

249 Fed. Rep. 109, reversed.

THE case is stated in the opinion.

*Mr. Charles W. Stockton*, with whom *Mr. K. E. Stockton* and *Mr. Edward R. Whittingham* were on the brief, for petitioner.

*Mr. Thomas Fite Paine* for respondent.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

Oscar G. Taylor, an express messenger of Wells Fargo & Company, a common carrier by express, received sub-

stantial personal injuries through the derailment of an express car in which he was working, and which was part of a passenger train moving over the railroad of the St. Louis and San Francisco Railroad Company in the State of Mississippi,—the derailment resulting from negligence on the part of the railroad company and its employees. To recover for these injuries Taylor brought an action against the railroad company in the Circuit Court of Monroe County, Mississippi, and obtained a judgment for $4,000, which was affirmed by the Supreme Court of the State without an opinion. See 58 So. Rep. 485.

In his declaration in that case Taylor explained and justified his presence on the train and in the express car by alleging that he was then in the employ of the express company as its messenger and in the course of that employment was in charge of express matter which the railroad company was transporting for the express company, that this transportation was in pursuance of a contract between the two companies, and that under the contract the express car was furnished by the railroad company and he, as the express company's messenger, was permitted to accompany the express matter carried therein.

While the declaration said nothing more about the nature or terms of that contract, it is important here to have them in mind. The contract shows that it was intended to, and did, cover all express business on and over the railroad company's road, both within and without the State of Mississippi, for a specified period, including the day when Taylor was injured. It gave to the express company the exclusive privilege of conducting an express business on and over the railroad and obligated the railroad company to refrain from conducting an express business. There were provisions whereby the railroad company agreed, (a) to transport by suitable cars, to be provided by it and attached to its passenger trains, all express matter of the express company and the messengers accompanying the

same, (b) to light and warm the cars and equip them with necessary conveniences, and (c) to permit portions of its station houses to be used by the express company for the reception, safekeeping and delivery of express matter. And there were other provisions whereby the express company agreed, (a) to make stated payments—usually a percentage of the gross earnings—for the facilities furnished and service rendered by the railroad company, (b) to assume all risks, losses and damages to its own property, express matter and valuable packages transported under the contract, (c) to assume all risk and damage to its agents and employees while engaged in its business on the trains or property of the railroad company, and (d) to indemnify and hold harmless the railroad company in respect of all claims for damages suffered by such agents and employees while so engaged.

- There was also a contract between Taylor and the express company, spoken of as a messenger's agreement, wherein,—following a recital that he had full knowledge of the service required and the conditions on which the railroad company would permit messengers to accompany express matter on its trains, and that with such knowledge he was desirous of becoming a messenger of the express company,—it was stipulated, as a term or condition of his employment, that neither the express company nor the railroad company should under any circumstances or in any case be liable for any injury which he might receive while on the railroad company's trains as such messenger, whether caused by negligence of the railroad company or otherwise, and that he would assume all and every risk incident to such employment, from whatever cause arising.

Promptly after Taylor sued the railroad company in the Circuit Court of Monroe County, and before the case was brought to trial, the express company presented to that court in that cause a petition wherein it set out the contracts just described and asked to be made a party defend-

ant.  To this the railroad company assented, but Taylor evidently objected and the petition was denied.   The railroad company by its answer and evidence sought to avail itself of the stipulation in the messenger's agreement, in connection with those in the other contract, but the court ruled against it and Taylor obtained the judgment before mentioned.

What has been recited will conduce to a right understanding of another suit the decree in which we are now to review.

The suit is in equity and was brought by the express company against Taylor in the District Court of the United States for the Northern District of Mississippi. The federal jurisdiction rests on diversity of citizenship,— the express company being a corporation and citizen of Colorado, and Taylor a citizen of Mississippi residing in the Northern District.   The bill, with a supplement and amendment, proceeds on the theory that, in suing the railroad company and obtaining a judgment against it, which as between that company and the express company must be paid by the latter as stipulated in their contract, Taylor not only violated the messenger's agreement, but perpetrated a legal fraud on the express company; that the judgment is therefore one which in equity and good conscience he has no right to enforce; that if he be permitted to enforce it the express company will be without any effective remedy in that he has no property which can be reached by legal process (a fact which is both alleged and proved); and that the express company, which was not a party to that case, and has not been in any wise negligent or at fault, is in equity and good conscience entitled to have the messenger's agreement respected and to demand that the claims embraced in the inequitable judgment be relinquished and the enforcement of the judgment enjoined.   The prayer conforms to that theory and is in substance that Taylor be required specifically to perform

and carry out the messenger's agreement, to execute a sufficient release of all claims on account of the injuries received, and to abstain from enforcing the judgment. General relief also is prayed.

Taylor challenged the bill by a demurrer, which was overruled, and after a hearing in due course the express company prevailed. On appeal to the Circuit Court of Appeals that decree was reversed and the suit remanded because in that court's opinion the bill did not show that Taylor was not in the employ of the railroad company or that he was solely in the employ of the express company. 220 Fed. Rep. 796. After the mandate was received, Taylor, conceiving that the decision of the Circuit Court of Appeals fully disposed of the merits and was final, requested the District Court to enter a decree dismissing the bill, and the express company requested leave to amend the bill by correcting the defect pointed out by the Circuit Court of Appeals. Taylor's request was denied and that of the express company was granted. The bill was accordingly amended so as to show that Taylor was not in the employ of the railroad company, but was on the train solely in virtue of his employment by the express company, and that in his declaration in the action against the railroad company he did not claim or allege any employment by that company, but, on the contrary, claimed and alleged that it permitted him to be on the train because he was accompanying the express matter as the express company's employee. Taylor then filed a new answer, and on a further hearing a decree for the express company was entered. By it the District Court found that the allegations of the bill, with its supplement and amendment, were all true; declared that the institution of the action against the railroad company and its prosecution to judgment constituted a violation of the messenger's agreement and a legal fraud on the express company; directed Taylor to carry out and perform the messenger's

agreement and to execute, within a fixed time, an appropriate instrument releasing the express company and the railroad company from all claims for damages on account of his injuries, and enjoined him from collecting or attempting to collect the judgment against the railroad company. On a further appeal to the Circuit Court of Appeals that decree was reversed with directions to dismiss the bill. 249 Fed. Rep. 109. A writ of certiorari was then granted by this court.

On the second appeal the Circuit Court of Appeals put its decision entirely on the ground that the express company was a "common carrier by railroad" within the meaning of the Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65, and therefore under § 5 of the act the messenger's agreement was void. Taylor advanced that and other grounds in asking a reversal, but the court did not discuss the other grounds. All are pressed on our attention, and we take them up in what seems the natural order.

1. It is urged that the decision of the Circuit Court of Appeals on the first appeal was final in that it disposed of all questions in the suit and left nothing open to the District Court but to dismiss the bill. Had this been so, the Circuit Court of Appeals on the second appeal hardly would have failed to enforce its prior decision. But that decision did not go as far as is claimed. It turned on the sufficiency of the bill, and on that alone. The District Court had held the bill sufficient when challenged by a demurrer. The Circuit Court of Appeals held it insufficient, and for that reason reversed the decree and remanded the suit. Had the District Court taken that view when acting on the demurrer, it undoubtedly could, and probably would, have allowed an amendment curing the defect. Could it not equally allow the amendment after the Circuit Court of Appeals pointed out the defect and remanded the suit? It, of course, was bound to give effect to the decision and

mandate of the Circuit Court of Appeals; but that court did not order the bill dismissed nor give any direction even impliedly making against the amendment. All that was disposed of was the matter of the sufficiency of the bill. And recognition of this is found in the last opinion of the Circuit Court of Appeals, where it is said that the first reversal was "based upon the insufficiency of the pleadings." We think the decision on the first appeal was not final and that the District Court was left free, in the exercise of its discretion, to permit the amendment. Equity Rules, Nos. 19 and 28; *In re Sanford Fork & Tool Co.*, 160 U. S. 247, 258–259; *Mutual Life Insurance Co. v. Hill*, 193 U. S. 551, 553; *Smith v. Adams*, 130 U. S. 167, 177. It appears that in denying a petition for a rehearing on the first appeal the Circuit Court of Appeals refused to direct the allowance of the amendment; but this signifies nothing more than that no occasion was perceived for controlling the District Court's discretion in the matter.

2. Section 265, Judicial Code, formerly § 720, Rev. Stats., provides that "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy"; and this is relied on as showing that the District Court could not entertain the suit. That court held the provision not applicable, and the Circuit Court of Appeals said nothing on the subject on either appeal, possibly because in a similar case it had held the provision without application.

Is the suit one to stay proceedings in a state court in the sense of that provision? If it is, the District Court erred in not dismissing the bill on that ground. *Haines v. Carpenter*, 91 U. S. 254; *Dial v. Reynolds*, 96 U. S. 340; *United States v. Parkhurst-Davis Co.*, 176 U. S. 317. If it is not, the court rightly entertained the suit and proceeded to an adjudication of the merits, for the citizenship of the

parties and the amount in controversy were within the jurisdictional requirements.

The provision has been in force more than a century and often has been considered by this court. As the decisions show, it is intended to give effect to a familiar rule of comity and like that rule is limited in its field of operation. Within that field it tends to prevent unseemly interference with the orderly disposal of litigation in the state courts and is salutary; but to carry it beyond that field would materially hamper the federal courts in the discharge of duties otherwise plainly cast upon them by the Constitution and the laws of Congress, which of course is not contemplated. As with many other statutory provisions, this one is designed to be in accord with, and not antagonistic to, our dual system of courts. In recognition of this it has come to be settled by repeated decisions and in actual practice that, where the elements of federal and equity jurisdiction are present, the provision does not prevent the federal courts from enjoining the institution in the state courts of proceedings to enforce local statutes which are repugnant to the Constitution of the United States, *Ex parte Young,* 209 U. S. 123; *Truax* v. *Raich,* 239 U. S. 33; *Missouri* v. *Chicago, Burlington & Quincy R. R. Co.,* 241 U. S. 533, 538, 543; or prevent them from maintaining and protecting their own jurisdiction, properly acquired and still subsisting, by enjoining attempts to frustrate, defeat or impair it through proceedings in the state courts, *French* v. *Hay,* 22 Wall. 250; *Julian* v. *Central Trust Co.,* 193 U. S. 93, 112; *Chesapeake & Ohio Ry. Co.* v. *Mc-Cabe,* 213 U. S. 207, 219; *Looney* v. *Eastern Texas R. R. Co.,* 247 U. S. 214, 221; or prevent them from depriving a party, by means of an injunction, of the benefit of a judgment obtained in a state court in circumstances where its enforcement will be contrary to recognized principles of equity and the standards of good conscience, *Marshall* v. *Holmes,* 141 U. S. 589; *Ex parte Simon,* 208 U. S. 144;

*Simon* v. *Southern Ry. Co.*, 236 U. S. 115; *Public Service Co.* v. *Corboy*, 250 U. S. 153, 160; *National Surety Co.* v. *State Bank of Humboldt*, 120 Fed. Rep. 593.

*Marshall* v. *Holmes*, just cited, was a suit in equity to enjoin one who had obtained judgments in a state court from enforcing them, that relief being sought on the ground that they were secured by fraud which was not discovered until after they were rendered; and the question distinctly presented was whether the suit was one which the Circuit Court of the United States could entertain and decide, the requisite diversity of citizenship and amount in dispute being present. This court,—after adverting to prior decisions stating the familiar doctrine that "any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery," and also showing that such a suit is not one to review or revise the action of the court rendering the judgment, but is a new and independent suit for equitable relief,—answered the question by saying: "These authorities would seem to place beyond question the jurisdiction of the Circuit Court to take cognizance of the present suit, which is none the less an original, independent suit, because it relates to judgments obtained in the court of another jurisdiction. While it cannot require the state court itself to set aside or vacate the judgments in question, it may, as between the parties before it, if the facts justify such relief, adjudge that Mayer shall not enjoy the inequitable advantage obtained by his judgments. A decree to that effect would operate directly upon him, and would not contravene that provision of the statute prohibiting a court of the United States from granting a writ of injunction to stay proceedings in a

state court. It would simply take from him the benefit of judgments obtained by fraud."

*Simon* v. *Southern Ry. Co., supra,* was a suit in a Circuit Court of the United States to enjoin the enforcement of a judgment in a state court on the ground that it was obtained by fraud and without notice, and the defendant invoked the provision in § 265. The Circuit Court took jurisdiction and awarded the relief sought. That decision was affirmed by the Circuit Court of Appeals and on a further appeal was sustained by this court. At that time this court considered the provision in the light of its origin and purpose, reviewed the prior decisions and in an extended opinion having the approval of the entire court reaffirmed the ruling in *Marshall* v. *Holmes.*

*National Surety Co.* v. *State Bank of Humboldt, supra,* was a suit in a federal court to obtain like relief in respect of a judgment in a state court on the ground that through a mistake of a public officer, for which he alone was responsible, the judgment had been rendered without opportunity for putting in a defense, and this when there was one which was both meritorious and complete. The suit was not brought by the judgment defendant, but by one who was obligated to pay the judgment if it was enforced. The bill was dismissed because of the provision now relied on; but that decision was reversed by the Circuit Court of Appeals in a well considered opinion wherein it was said that in cases otherwise within the jurisdictional statute "the Circuit Courts of the United States have the same jurisdiction and power to enjoin a judgment plaintiff from enforcing an unconscionable judgment of a state court, which has been procured by fraud, accident, or mistake, that they have to restrain him from collecting a like judgment of a federal court"; that the bill presented a new and justiciable case which had not been presented to nor decided by the state court and did not "fall under the ban of the section of the statute under consideration"; and

that "In this case all these facts concur—the judgment which it is against conscience to allow to be used to extort money that is not owing from a defendant remediless at law, the complete meritorious defense to the claim on which this judgment is based, the fact that the defendant in the judgment was prevented from availing itself of its defense to the cause of action by an unavoidable accident, and the absence of any negligence of the defendant or of its agents. These facts appeal with compelling force to the conscience of a chancellor. They have been presented to a court to which the Constitution and the acts of Congress have granted the power, and upon which they have imposed the duty, to grant the relief to which the complainants are equitably entitled; and the decree which dismissed their bill must be reversed."

Without pursuing the subject further, we hold that the present suit is not one to stay proceedings in a state court in the sense of § 265.

3. Does the Employers' Liability Act affect the validity of the messenger's agreement?

The act provides that "every common carrier by railroad" shall be liable in damages for the injury or death of any of its employees occurring while it is engaged and he is employed in interstate commerce and resulting in whole or in part from the negligence of any of its officers, agents or employees, or from any defect or insufficiency, due to its negligence, "in its cars, engines, appliances, machinery, track, roadbed," etc.; and in § 5 it declares that any contract whereby a common carrier exempts itself from "any liability created by this Act" shall to that extent be void.

In his declaration in the state court Taylor did not claim that he was in the employ of the railroad company, and his judgment was not obtained on that theory. Here it is shown with certainty that he was not in that company's employ. True he urges that the contract between the two

companies shows a co-proprietorship or sort of partnership between them which made him an employee of both; but the contract discloses no basis for the claim or for distinguishing his case from that of the Pullman porter recently before us. *Robinson* v. *Baltimore & Ohio R. R. Co.*, 237 U. S. 84. Here the businesses of the companies concerned were quite as distinct in point of control and otherwise as they were there. That here the railroad company provided the express car is not material, for it is measurably equalized by other differences. In both cases the railroad company provided the motive power and the train operatives. The messenger here, like the porter there, was on the train as an employee, not of the railroad company, but of another by whom he was employed, directed and paid, and at whose will he was to continue in service or be discharged.

As respects the express company, it appears not merely that Taylor was in its employ, but also that the injuries were received while it was engaged and he was employed in interstate commerce; and so the question is presented whether the act embraces a common carrier by express which neither owns nor operates a railroad, but uses and pays for railroad transportation in the manner before shown. The District Court answered the question in the negative and the Circuit Court of Appeals in the affirmative. A negative answer also has been given in a like situation by the Court of Errors and Appeals of New Jersey, *Higgins* v. *Erie R. R. Co.*, 89 N. J. L. 629; and a recent decision by the Supreme Court of Minnesota makes persuasively for that view. *State ex rel. Great Northern Express Co.* v. *District Court*, 142 Minnesota, 410.

In our opinion the words "common carrier by railroad," as used in the act, mean one who operates a railroad as a means of carrying for the public,—that is to say, a railroad company acting as a common carrier. This view not only is in accord with the ordinary acceptation of the words,

but is enforced by the mention of cars, engines, track, roadbed and other property pertaining to a going railroad (see *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, 212–213); by the obvious reference in the latter part of §§ 3 and 4 to statutes requiring engines and cars to be equipped with automatic couplers, standard drawbars and other appliances intended to promote the safety of railroad employees (see *San Antonio & Aransas Pass Ry. Co.* v. *Wagner*, 241 U. S. 476, 484); by the use of similar words in closely related acts which apply only to carriers operating railroads, c. 196, 27 Stat. 531; c. 225, 35 Stat. 476; c. 208, 36 Stat. 350, and by the fact that similar words in the original Interstate Commerce Act had been construed as including carriers operating railroads but not express companies doing business as here shown. 1 I. C. C. 349; *United States* v. *Morsman*, 42 Fed. Rep. 448; *Southern Indiana Express Co.* v. *United States Express Co.*, 88 Fed. Rep. 659, 662; s. c. 92 Fed. Rep. 1022. And see *American Express Co.* v. *United States*, 212 U. S. 522, 531, 534.

As Taylor was not an employee of the railroad company and the express company was not within the Employers' Liability Act, it follows that the act has no bearing on the liability of either company or on the validity of the messenger's agreement.

4. There being no statute regulating the subject, it is settled by the decisions of this court, and is recognized in other jurisdictions, that the messenger's agreement was a valid and binding contract whereby Taylor agreed to assume all risk of injury incident to his employment, from whatever cause arising, assented to the contractual arrangement between the two companies in respect of such injuries, and became obligated to the express company to refrain from asserting any liability against it or the railroad company on account of any such injuries. *Express Cases*, 117 U. S. 1; *Baltimore & Ohio Southwestern Ry. Co.* v. *Voigt*, 176 U. S. 498, and cases cited; *Santa Fe,*

*Prescott & Phœnix Ry. Co.* v. *Grant Brothers Construction Co.,* 228 U. S. 177; *Robinson* v. *Baltimore & Ohio R. R. Co., supra; Perry* v. *Philadelphia, Baltimore & Washington R. R. Co.,* 24 Delaware, 399; *McKay* v. *Louisville & Nashville R. R. Co.* (Tenn.), 182 S. W. Rep. 874; *Fowler* v. *Pennsylvania R. R. Co.,* 229 Fed. Rep. 373. In violation of that agreement he wrongfully sought and obtained a judgment against the railroad company, which as between the two companies the express company is bound to pay. The judgment was obtained in an action to which that company was not a party and wherein it could not be heard. He is financially irresponsible and if the judgment is collected the express company, which has not been in any wise negligent or at fault, will be remediless. In these circumstances, that company is entitled in equity and good conscience, as is shown by the cases before cited, to a decree holding him to his agreement and depriving him of his present inequitable advantage, and to that end enjoining him from collecting the judgment.

It follows that the decree of the District Court was right and that the Circuit Court of Appeals erred in reversing it.

*Decree reversed.*