**Kenneth Ray SULLIVAN,
Plaintiff–Appellant,**

v.

**SCOULAR GRAIN COMPANY OF UTAH, the Scoular Company, James F. Hannan, Robert O'Block, and Gordon Olch, doing business as Freeport Center Associates, Defendants–Appellees,**

and

**Union Pacific Railroad Company, a Utah corporation; Trackmobile, Inc., formerly known as Whiting Corp., a Georgia corporation; Denver & Rio Grande Western Railroad Company, a Delaware corporation; Oregon Short Line Railroad Company, a Utah corporation; Utah Power & Light Company, a Utah corporation; and G. W. Van Keppel Company, a Missouri corporation, Defendants.**

No. 90–4012.

United States Court of Appeals,
Tenth Circuit.

April 12, 1991.

L. Rich Humpherys (M. Douglas Bayly, with him on the briefs), of Christensen, Jensen & Powell, P.C., Salt Lake City, Utah, for plaintiff-appellant.

Terry M. Plant (Scott F. Squire, with him on the brief), of Hanson, Epperson & Smith, P.C., Salt Lake City, Utah, for defendants-appellees Scoular Grain Co. of Utah, The Scoular Co. and Scoular Grain Co.

John M. Chipman (Linda L.W. Roth and John L. Black, Jr., with him on the brief), of Hanson, Nelson, Chipman & Quigley, Salt Lake City, Utah, for defendants-appellees Robert O'Block and Gordon Olch dba Freeport Center Associates.

Before LOGAN, SETH, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Plaintiff-appellant Kenneth Sullivan appeals a district court order granting summary judgment in favor of defendants-appellees Scoular Grain Company (Scoular), Scoular Grain Company of Utah (Scoular Grain Venture), and Freeport Center Associates (Freeport). On appeal, Sullivan argues the district court erred by finding that no issue of fact remains regarding whether the defendants are common carriers by railroad under the Federal Employer's Liability Act (FELA or the Act). Sullivan also argues the district court erred by granting summary judgment in favor of Freeport on the question whether it is immune from liability on state claims because of Sullivan's recovery of worker's compensation. This appeal comes to us by certification from the district court pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. We exercise jurisdiction under 28 U.S.C. § 1291, deny Sullivan's motion to certify the immunity issue to the Utah Supreme Court, and affirm.

## I.  FACTS

Scoular, a grain storage company, and Freeport, a commercial warehouse lessor, entered into an agreement creating a joint venture, Scoular Grain Venture, for grain storage adjacent to railroad tracks owned and maintained by several commercial railroads. The joint venture agreement provides that "[e]ach Venturer shall participate in the control, management and direction of the business of the Joint Venture." Scoular and Freeport share the profits and losses of the joint venture according to a formula outlined in the agreement. Freeport contributes property for grain storage, and Scoular has provided working capital for the venture as required. Among Scoular's contributions are payments of employee wages and worker's compensation insurance premiums as allocated to Scoular Grain Venture.

Grain is shipped to Scoular Grain Venture at Freeport Center in Clearfield, Utah by railroad companies. Scoular Grain Venture moves the loaded grain cars to its warehouses with a Trackmobile, a diesel vehicle that propels the cars toward a location for unloading.

Sullivan, an employee of Scoular Grain Venture, was involved in an accident while unloading grain. Injuries from the accident required amputation of Sullivan's left arm and leg. Sullivan received $200,000 in worker's compensation for his injuries.

Sullivan filed this action against Scoular Grain Venture, Scoular, Freeport, and other defendants not parties to this appeal, including Union Pacific Railroad Company and Oregon Short Line Railroad Company. Scoular Grain Venture, Scoular, and Freeport moved for summary judgment and Sullivan moved for partial summary judgment. The district court granted the motions of Scoular Grain Venture, Scoular, and Freeport and denied Sullivan's motion.

## II.  DISCUSSION

### A.  Standard of Review

We review a district court's summary judgment under the same standard the district court applies pursuant to Rule 56 of

the Federal Rules of Civil Procedure. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). In determining whether there is a genuine issue of material fact, we view all facts and inferences in the light most favorable to the nonmoving party. *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir. 1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A nonmoving party cannot survive a motion for summary judgment based on bare allegations in the pleadings without supporting evidence. *See, e.g., Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir.1989); Fed.R.Civ.P. 56(e). After adequate time for discovery, summary judgment is mandatory against a party failing to show the existence of an element essential to the proof of its case at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### B. Scoular Grain Venture's Liability Under FELA

■ FELA establishes a cause of action for damages from any "common carrier by railroad" engaged in interstate commerce for "any person suffering injury while … employed by such carrier … for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. "Common carrier" includes the "receiver or receivers or other persons or corporations charged with the duty of the management and operation of the business as a common carrier." *Id.* § 57.

In *Wells Fargo & Co. v. Taylor*, 254 U.S. 175, 41 S.Ct. 93, 65 L.Ed. 205 (1920), the Supreme Court explained a "common carrier by railroad" is simply

> one who operates a railroad as a means of carrying for the public—that is to say, a railroad company acting as a common carrier. This view not only is in accord with the ordinary acceptation of the

words, but is enforced by the mention of cars, engines, track, roadbed and other property pertaining to a going railroad. *Id.* at 187–88, 41 S.Ct. at 98. Applying this common sense definition, the Court in *Wells Fargo* held an express company that neither owns or operates a railroad but uses and pays for rail transportation is not a common carrier within the scope of the Act. *Id.* at 188, 41 S.Ct. at 98.

The Supreme Court also relied on this definition in *Edwards v. Pacific Fruit Express Co.*, 390 U.S. 538, 88 S.Ct. 1239, 20 L.Ed.2d 112 (1968), in deciding a refrigerator car company that owns, maintains, and leases refrigerator cars to railroads for transporting perishable products in interstate commerce is not within the scope of the Act. The Court stressed that an entity subject to FELA liability must "operat[e] a railroad"—that is, a "going railroad"—as the *Wells Fargo* decision requires. *Pacific Fruit*, 390 U.S. at 540–41, 88 S.Ct. at 1240–41. The Court in *Pacific Fruit Express* noted "that there exist a number of activities and facilities which, while used in conjunction with railroads and closely related to railroading, are yet not railroading itself." 390 U.S. at 540, 88 S.Ct. at 1240. The Court explained that Congress had ratified this interpretation of the limited scope of the Act by declining to expand coverage in the 1939 amendments to include "activities and facilities intimately associated with the business of common carrier by railroad." *Id.* at 541, 88 S.Ct. at 1241; *see also* S.Rep. No. 1708, 76th Cong., 1st Sess. (1939).

Here, Scoular is a grain storage company and Freeport is a commercial warehouse lessor. The joint venture they created unloads and stores grain in Freeport Center. Although the defendants receive grain shipped by railroad companies and store grain adjacent to railroad tracks owned and maintained by railroad companies, none of the defendants in this appeal operates a going railroad that carries for the public. The fact the defendants own or lease miles of railroad track, hundreds of railroad cars, and several switch engines, Trackmobiles, and tractors does not make them common

carriers under the Act because they are not a going railroad. We conclude Sullivan has not shown a genuine issue of material fact remains regarding Scoular Grain Venture's liability under the FELA.

Sullivan argues factual disputes remain on this issue based on the four-part test for a common carrier announced in *Lone Star Steel Co. v. McGee,* 380 F.2d 640, 647 (5th Cir.), *cert. denied,* 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967). Although the *Lone Star* analysis may provide some guidance, we agree with the Sixth Circuit that the four elements in *Lone Star* comprise "only a list of *considerations* for a court to keep in mind when determining whether a carrier is a 'common carrier'" by railroad. *Kieronski v. Wyandotte Terminal R.R.,* 806 F.2d 107, 108 (6th Cir.1986) (original emphasis). These considerations do not replace the statutory requirements identified by the Supreme Court in *Wells Fargo* and *Pacific Fruit.* Further, we are not convinced the alternative analysis proposed in *Kieronski* focusing on three categories of carriers that might fall within the scope of FELA—private carriers, linking carriers, and in-plant systems—adds to the insights found in *Lone Star. Compare Kieronski,* 806 F.2d at 109–110 *with Lone Star,* 380 F.2d at 646–47. Qualifying as one or a combination of these types of carriers does not necessarily mean a carrier has satisfied the statutory requirements of FELA as interpreted by the Supreme Court.

Moreover, application of either the *Lone Star* or *Kieronski* approach would not change the result in this case. In a series of cases following *Lone Star,* the Fifth Circuit has found companies involved in grain storage are not common carriers by railroad. *See McCrea v. Harris County Houston Ship Channel Navigation Dist.,* 423 F.2d 605, 609 (5th Cir.) (navigation district owning no locomotives or cars and making no direct charge for movement by rail not a common carrier even though it moved railroad cars over a few hundred feet of track incident to unloading grain at storage facilities), *cert. denied,* 400 U.S. 927, 91 S.Ct. 189, 27 L.Ed.2d 186 (1970); *Mahfood v. Continental Grain Co.,* 718 F.2d 779, 782 (5th Cir.1983) (grain export

company not performing railroad services for others not a common carrier even though it owned several thousand feet of track within its facility, used two locomotives, employed a four-person loading crew, and contracted with a railroad to deliver railroad cars to the facility and remove them after unloading). Other circuits have found operations similar to Scoular Grain Venture are not common carriers. *See, e.g., Aho v. Erie Mining Co.,* 466 F.2d 539, 540–41 (8th Cir.1972) (mining company operating a railroad that only transports its own products not a common carrier); *Kieronski,* 806 F.2d at 109–10 (operation with characteristics of both an in-plant system and private carrier not a common carrier). We conclude summary judgment in favor of the defendants on Sullivan's FELA claim was proper.

## C. Freeport's Liability Under State Law

The Utah Worker's Compensation Act provides: "[T]he liabilities of the employer imposed by this act shall be in place of any and all other civil liability whatsoever, at common law or otherwise, to such employee." Utah Code Ann. § 35–1–60 (1985). The Utah Supreme Court has stated the "immediate, or common law, employer, who actually pays compensation, and its officers, agents, and employees are shielded by the exclusive remedy immunity" of section 35–1–60. *Pate v. Marathon Steel Co.,* 777 P.2d 428, 430 (Utah 1989). Further, the court has held a joint venturer is immune from liability for injuries sustained by an employee of the venture while on the job. *Hammer v. Gibbons & Reed Co.,* 29 Utah 2d 415, 510 P.2d 1104, 1105 (1973). In Utah, a joint venture is created when there is "a community of interest in the performance of the common purpose, a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits, and ... a duty to share in any losses which may be sustained." *Bassett v. Baker,* 530 P.2d 1, 2 (Utah 1974); *see also Betenson v. Call Auto. & Equip. Sales, Inc.,* 645 P.2d 684, 686 (Utah 1982).

The Utah Supreme Court explained the application of section 35–1–60 to a joint

venturer in *Cook v. Peter Kiewit Sons Co.*, 15 Utah 2d 20, 386 P.2d 616, 617–18 (1963). The court noted there are two main objectives for the Utah Worker's Compensation Act. The first is to assure an employee injured on the job will have necessary medical and hospital care and "modest but certain compensation" for injuries. *Id.* at 617. The second objective is to afford employers a "measure of protection against exorbitant claims." *Id.*

Consideration of these objections led the court in *Cook* to conclude payment of worker's compensation insurance premiums by one joint venturer renders the other joint venturer immune from liability:

> It is not disputed that this was a joint venture by which the [venturers] agreed to join together in [a common purpose] and to share profits or losses in the enterprise. Doing so united for a common purpose for mutual profit, these companies became partners in the venture just the same as if two individuals had entered into it, and whatever one company and its employees did in furthering the project would inure to the benefit of the other. Accordingly, it would seem that [one venturer's] act in paying premiums for workmen's compensation to protect itself against loss should also redound to the benefit of [the other] and vice versa. It also follows that under such arrangement, the partnership entity should be regarded as the employing unit.

*Id.* 386 P.2d at 617–18 (footnotes omitted). The court stated that permitting an employee to sue the joint venturer who did not actually pay the worker's compensation insurance premiums would allow the employee to " 'have his cake and eat it too' by getting the certain workmen's compensation and also the right to sue the employing unit for another and possibly greater recovery for his injury." *Id.* 386 P.2d at 618.

Here, Scoular and Freeport entered into an agreement to create a joint venture. The agreement demonstrates the venturers have a community of interest in the storage of grain. Freeport and Scoular's contributions to Scoular Grain Venture create joint proprietary interest in that venture.

Further, in stating "[e]ach venturer shall participate in the control, management and direction of the business of the Joint Venture," the agreement establishes a mutual right to control Scoular Grain Venture. The profits and losses of Scoular Grain Venture are shared by Freeport and Scoular according to a formula provided in the agreement.

None of the provisions in the agreement establishing the joint venture is disputed by Sullivan, nor does he argue the agreement is a sham. Sullivan has not shown a genuine issue of fact remains regarding Scoular Grain Venture's status under Utah law. Sullivan concedes that he recovered benefits pursuant to the Worker's Compensation Act and Scoular paid the insurance premiums. No genuine issues of fact remain to be determined in applying section 35–1–60. As a matter of law, we hold Freeport is immune from liability on the state claims as a joint venturer in Scoular Grain Venture.

■ Sullivan argues Scoular Grain Venture is not a joint venture because Scoular actually ran the operation. He asserts Freeport's liability should be assessed based on the line of decisions by the Utah courts developing the statutory employee doctrine. *See, e.g., Pate,* 777 P.2d 428; *Bennett v. Industrial Comm'n,* 726 P.2d 427 (Utah 1986). We disagree. Whether Scoular exercised sole responsibility for the *daily* joint venture operations as "Managing Venturer" is immaterial as long as each venturer retained the mutual right to control the joint venture. Scoular's possible "control" over employees such as Sullivan is merely one aspect of its daily management responsibilities, not a factor affecting Freeport's status as a joint venturer under Utah law. Similarly, any failure by the parties to comply with other terms of the agreement such as establishing a joint venture bank account is immaterial to Scoular Grain Venture's status as a joint venture.

■ Sullivan also argues the district court should not have exercised pendent jurisdiction and addressed the issue of Freeport's immunity from liability on the state law claims. As the Supreme Court

has explained: "Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under ... the Laws of the United States ...' and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (original emphasis, citations and footnote omitted). The Court in *Gibbs* stated two requirements must be met for the federal courts to have power to hear the whole case: (1) the "federal claim must have substance sufficient to confer subject matter jurisdiction on the court" and (2) "the state and federal claims must derive from a common nucleus of operative fact." *Id.* Here, the parties do not dispute the district court's power to exercise pendent jurisdiction based on the substantiality of the FELA claim and the source of all claims in a common nucleus of operative facts.

Once power exists over pendent state claims, the decision to exercise this power is a matter of judicial discretion informed by "considerations of judicial economy, convenience and fairness to litigants" and comity in the federal system. *Id.* at 726, 86 S.Ct. at 1139; *see also Rosado v. Wyman*, 397 U.S. 397, 403, 90 S.Ct. 1207, 1213, 25 L.Ed.2d 442 (1970). Because pendent jurisdiction is a "doctrine of discretion," we will reverse a district court's decision to exercise jurisdiction over pendent state claims only when there is abuse of discretion. *Doe v. Board on Professional Responsibility of the Dist. of Columbia Court of Appeals*, 717 F.2d 1424, 1428 (D.C.Cir. 1983). Here, we are convinced the district court served the interests of judicial economy, convenience, and fairness to the parties by exercising jurisdiction over the pendent claims. We find no abuse of discretion.

Sullivan points out the *Gibbs* opinion states "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." 383 U.S. at 726, 86 S.Ct. at 1139. However, as the Supreme Court explained in *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108

S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988), this language in *Gibbs* "does not establish a mandatory rule to be applied inflexibly in all cases." *See also Rosado*, 397 U.S. at 404–05, 90 S.Ct. at 1213–14. The Court stressed that when federal claims are eliminated before trial, the court must consider all the factors of judicial economy, convenience, fairness, and comity in deciding whether to exercise pendent jurisdiction. *Cohill*, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7; *but see Central Nat'l Bank v. Rainbolt*, 720 F.2d 1183, 1187 (10th Cir.1983) (without benefit of clarification in *Cohill*, concluding Court's direction in *Gibbs* "compels" dismissal of state claims when federal claims dismissed before trial regardless of four considerations in *Gibbs*). Balancing these four factors, we conclude the district court did not abuse its discretion in deciding the state claims.

Sullivan argues that comity requires us to avoid deciding novel state law issues under pendent jurisdiction. Declining pendent jurisdiction is appropriate when the court needs a "surerfooted" analysis of state law in an area of particular importance to a state. *See Board on Professional Responsibility*, 717 F.2d at 1428. These concerns are not implicated here because we are convinced Utah law is conclusive on whether a joint venture has been created and whether the joint venturers are immune from liability on the state law claims under section 35–1–60.

Finally, Sullivan argues we should not exercise pendent jurisdiction over the state claims against Freeport because the district court is considering whether to exercise pendent jurisdiction over claims against Union Pacific and Oregon Short Line Railroads. Sullivan asserts he might be caught in the middle of conflicting positions regarding pendent jurisdiction and be forced to pursue piecemeal litigation. In a memorandum decision and order, *Sullivan v. Scoular Grain Company of Utah*, No. 87–C–330G (Aug. 23, 1990), the district court decided to retain pendent jurisdiction over the state claims against those defendants because of the substantial time and energy expended by the court and the par-

ties during more than three years of extensive discovery and pretrial proceedings. Based on the district court's decision in that related matter, we are convinced Sullivan's fears are unfounded.

We DENY Sullivan's motion to certify the immunity issue to the Utah Supreme Court and AFFIRM the rulings of the district court.