[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 12, 2006
THOMAS K. KAHN
CLERK

Nos. 05-14279 & 06-12455

D. C. Docket No. 02-02354 CV-P-S

DORLAN WAYNE WILLARD,

                                                    Plaintiff-Appellant,

        versus

FAIRFIELD SOUTHERN COMPANY, INC.,
BIRMINGHAM SOUTHERN RAILROAD COMPANY,

                                                    Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Alabama

**(December 12, 2006)**

Before ANDERSON and DUBINA, Circuit Judges, and VINSON,* District Judge.

DUBINA, Circuit Judge:

_____
*Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida,
sitting by designation.

Appellant, Dorlan Wayne Willard ("Willard"), appeals the district court's orders denying his Rule 60(b) motion and granting summary judgment to defendants/appellees, Fairfield Southern Company, Inc. ("Fairfield") and Birmingham Southern Railroad Company ("BSRR"), the parent company of Fairfield, on Willard's Federal Employer's Liability Act ("FELA") claim.[1] For the reasons that follow, we affirm the district court's orders.

## I. BACKGROUND

A. *Facts*

The district court found the following undisputed facts. In 1983, U.S. Steel Fairfield Works ("Fairfield Works") transferred its rail operations to Fairfield, a newly formed corporation, which became a subsidiary of BSRR. BSRR is a common carrier by rail that holds itself out to the public for hire. Fairfield and BSRR share a Board of Directors, a trainmaster, office address, and emergency phone number. Fairfield pays BSRR a management fee for supervision of Fairfield's employees. Fairfield's trainmen and acting tower supervisors are the

---

[1] Willard appealed the district court's order denying his motion for summary judgment, and this court lodged that appeal as No. 05-14279. While this appeal was pending, Willard filed a Rule 60(b) motion with the district court, asserting newly discovered evidence that he asserted entitled him to relief from the district court's prior summary judgment order. After a hearing, the district court denied the motion, and Willard appealed. This court lodged that appeal as No. 06-12455 and consolidated the appeals.

only Fairfield employees who work solely for Fairfield. All other Fairfield supervisors are also BSRR employees.

Fairfield provides rail service to U.S. Steel Corporation ("U.S. Steel"), to two vendors of Fairfield Works whose facilities are located on U.S. Steel's property (Fritz Enterprises and Tube City), and to U.S. Steel Mining Company, LLC ("U.S. Steel Mining"), a wholly owned subsidiary of U.S. Steel. Fairfield has separate and distinct contracts with Fairfield Works, U.S. Steel Mining, Fritz Enterprises, and Tube City. No common carrier, including BSRR, is a party to those contracts. Fairfield directly invoices its customers, and they, in turn, directly pay Fairfield for its services. Fairfield maintains a separate account which is used for funding its payroll and payments to vendors. Fairfield does not publish rate tariffs and does not receive any rate division from any common carrier railroad.

Furthermore, Fairfield does not own or lease any railroad tracks, and it does not maintain any wharves, docks, or other public facilities for the receipt or handling of freight. Fairfield does not link two common carriers. It operates only on tracks owned by the customers it serves. Nor does it operate over the tracks of any common carrier railroad, including BSRR.

In addition, Fairfield employees pay employment taxes under the Social Security Act, not the Railroad Retirement Act, and the employees are eligible to

3

receive Alabama state unemployment benefits rather than benefits under the Railroad Unemployment Insurance Act. The United Steel Workers of America represents Fairfield's employees and the National Labor Relations Act governs their employment relationship. By contrast, the United Transportation Union and the Brotherhood of Locomotive Engineers represent BSRR train operating personnel, and the Railway Labor Act governs their employment relationship with BSRR. The Occupational Safety and Health Commission regulates Fairfield's train operations, while the Federal Railroad Administration regulates BSRR's train operations.

B. *Procedural History*

On September 25, 2002, Willard filed suit under the FELA, 45 U.S.C. § 51 (1986), against his employer, Fairfield, and its parent company, BSRR, for injuries that he allegedly incurred at work. Willard filed a motion for partial summary judgment and Fairfield and BSRR filed motions for summary judgment. Several months later, Willard filed a Rule 56(f) motion to reopen discovery because he learned that the Federal Railroad Administration ("FRA") was investigating whether Fairfield was within its jurisdiction. The district court reopened discovery at Willard's request, and thereafter twice extended the time for reopened discovery because the FRA did not rule on the Fairfield matter in a timely fashion.

4

By March 17, 2005, when the FRA had still not ruled on the matter, the district court took the motions for summary judgment under submission with the evidentiary material available as of that date.

In their motion for summary judgment, Fairfield and BSRR argued that Fairfield is an in-plant railroad not subject to the FELA; that Fairfield is not the alter ego of BSRR; and in any event, Willard was judicially estopped from pursuing any claims under the FELA because he already had accepted full medical benefits under the Alabama Workers' Compensation Act plus indemnity payments for his alleged injuries. Willard countered in his motion for summary judgment that Fairfield is subject to the FELA because it, like BSRR, is a common carrier by rail engaged in interstate commerce. Willard also claimed that his suit against BSRR was appropriate because Fairfield was BSRR's alter ego.

The district court granted summary judgment in favor of Fairfield and BSRR, finding that Fairfield is a private carrier, not a common carrier subject to the FELA. The district court also found that Fairfield is not the alter ego of BSRR. In light of its findings and conclusions, the district court declined to consider Fairfield and BSRR's estoppel argument. Willard filed a timely appeal.

While Willard's appeal from the district court's order on summary judgment was pending, he filed a Rule 60(b) motion to set aside final summary judgment,

asserting that a letter from the FRA was "newly discovered evidence" which entitled him to relief from the court's prior summary judgment order. The district court requested briefing on the motion, then conducted oral argument on the matter. Following argument, the district court denied Willard's Rule 60(b) motion, finding that the FRA letter did not change its prior finding that Fairfield is a private carrier not subject to the FELA. Willard also appeals this order.

## II.  ISSUES

1.  Whether the district court erred in granting summary judgment to Fairfield and BSRR because it found that Fairfield is a private carrier not subject to the FELA and that Fairfield is not the alter ego of BSRR.

2.  Whether the district court abused its discretion in denying Willard's Rule 60(b) motion.

## III.  STANDARDS OF REVIEW

This court reviews *de novo* a district court's order granting a motion for summary judgment, applying the same legal standards as the district court. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1242 (11th Cir. 2001).

This court reviews the district court's order on a Rule 60(b) motion for abuse of discretion. *Am. Bankers Ins. Co. of Fla. v. Nw. Nat'l Ins. Co.*, 198 F.3d 1332, 1338 (11th Cir. 1999).

6

## IV.  DISCUSSION

A.  Summary Judgment Motion

1. *Common Carrier*

The FELA creates a cause of action for injury sustained when the plaintiff is an employee and the defendant is a "common carrier by railroad" engaging in commerce between any of the several states or territories.  45 U.S.C. § 51.  Section 51 provides:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or . . . any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

*Id.*  The term "common carrier by railroad" has been defined to mean "one who operates a railroad as a means of carrying for the public, – that is to say, a railroad company acting as a common carrier." *Edwards v. Pac. Fruit Express Co.*, 390 U.S. 538, 540, 88 S. Ct. 1239, 1240 (1968) (quoting *Wells Fargo & Co. v. Taylor*, 254 U.S. 175, 187-88, 41 S. Ct. 93, 98 (1920)).  More recently, courts have noted that a common carrier is

7

one who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering his services to the public generally. The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently, and hence is regarded in some respects as a public serv[a]nt.

*Kieronski v. Wyandotte Terminal R.R. Co.*, 806 F.2d 107, 108 (6th Cir. 1986) (quoting *Kelly v. Gen. Elec. Co.*, 110 F. Supp. 4, 6 (E. D. Pa.), *aff'd*, 204 F.2d 692 (3d Cir. 1953)). It is the plaintiff's burden to show that the defendant is a common carrier, and the plaintiff "therefore must present affirmative evidence indicating such." *Mickler v. Nimishillen and Tuscarawas Ry. Co.*, 13 F.3d 184, 189 n.3 (6th Cir. 1993).

Willard failed to meet his burden of presenting affirmative evidence that Fairfield is a common carrier. The evidence indicates that Fairfield does not hold itself out to the public as providing rail service for hire. *See Sullivan v. Scoular Grain Co.*, 930 F.2d 798, 800 (10th Cir. 1991) (relying on *Wells Fargo* and *Edwards* to conclude that although defendants received grain shipped by railroad companies and stored grain adjacent to railroad tracks owned and maintained by railroad companies, none of the defendants operated a going railroad that carried for the public; thus, defendants were not common carriers subject to the FELA). Instead, the evidence shows that Fairfield is an in-plant railroad that transports

8

products within the confines of its property. "Industries operating in-plant rail facilities for their own benefit and not offering transportation to the public for a fee are not considered common carriers." *Iverson v. So. Minn. Beet Sugar Co-Op*, 62 F.3d 259, 263 (8th Cir. 1995). In a situation where an industry maintains a complicated intra-plant railroad system, such rail operations will be regarded as plant facilities rather than those of a common carrier. *See Lone Star Steel Co. v. McGee*, 380 F.2d 640, 644 (5th Cir. 1967).[2] "The movement of freight within the plant is not common carriage, but rather industrial plant usage." *Id.*

Furthermore, considering the factors enunciated by the court in *Lone Star* to determine whether an entity is a common carrier, we conclude that Fairfield is not a common carrier.[3] The *Lone Star* factors are whether (1) the entity is actually performing rail service; (2) the service being performed is part of the total rail service contracted for by a member of the public; (3) the entity is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad or by a contractual relationship with a railroad and

---

[2] In *Bonner v. City of* Prichard 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the Fifth Circuit handed down prior to close of business on September 30, 1981.

[3] Like the court in *Kieronski*, we do not consider the *Lone Star* factors to be a "test." 806 F.2d at 108. As the *Lone Star* court noted, this is only a list of considerations for the court to keep in mind when determining whether a carrier is a "common carrier." *See Lone Star*, 380 F.2d at 647.

9

hence such entity is deemed to be holding itself out to the public; and (4) remuneration for the services performed is received in some manner, such as a fixed charge from a railroad or by a percent of the profits, from a railroad. *Id.* at 647. Although there is no dispute that Fairfield performs rail service, the other three *Lone Star* factors are not present in this case.

Fairfield does not perform common carrier services for BSRR. Fairfield is a private carrier that hauls for clients "pursuant to individual contracts, entered into separately with each customer." *Kieronski*, 806 F.2d at 109. Fairfield performs rail service for its in-plant scrap recyclers, Tube City and Fritz Enterprises, pursuant to contracts with those facilities. Fairfield's rail service for these companies is performed only within its own boundaries. Thus, the second and third *Lone Star* factors are not satisfied.

With regard to the fourth *Lone Star* factor – remuneration for the services performed – the companies within Fairfield's property pay Fairfield directly, and Fairfield directly invoices the facilities. Fairfield does not collect payment from any common carrier railroad, and it does not hold itself out to the public for a fee. *See Iverson*, 62 F.3d at 264 (applying the *Lone Star* factors and affirming summary judgment in FELA case because the in-plant rail operation of the employer was not offering transportation to the public for a fee and thus was not

10

considered a common carrier). Thus, applying these factors, we conclude that Fairfield is not a common carrier, but a private carrier performing services via direct contracts with customers.

2. *Alter Ego*

The FELA provides that a covered railroad is liable for negligently causing the injury or death of any person "while he is employed" by the railroad. 45 U.S.C. § 51. Willard contends that BSRR is a proper defendant to his FELA claim because Fairfield is the alter ego of BSRR. We disagree.

It is undisputed that Fairfield, not BSRR, employed Willard as one of the ground crew. Willard's job at Fairfield was to move rail cars from point to point, switch out cars, operate and ride on train engines, and pick up and deliver goods to customers and to BSRR. Willard admitted in his deposition that he worked for Fairfield and had never worked for BSRR. Additionally, under Alabama law, BSRR is not Willard's employer because it did not so control the operation of Fairfield as to make it a mere adjunct, instrumentality, or alter ego of BSRR. *See Duff v. So. Ry. Co.*, 496 So. 2d 760, 762 (Ala. 1986). In order to demonstrate that Fairfield is the alter ego of BSRR, Willard would have to produce evidence that there was, for example, a commingling of funds, or a failure to follow corporate formalities, or under-capitalization. *See Perry v. Brakefield*, 534 So. 2d 602, 605

11

(Ala. 1988); *Forester & Jerue, Inc. v. Daniels*, 409 So. 2d 830, 832 (Ala. 1982). Willard cannot meet this burden.

The defendants present sufficient evidence to demonstrate that Fairfield and BSRR are financially independent. All of Fairfield's earnings come from the four in-plant customers that it serves: U.S. Steel, U.S. Steel Mining, Fritz Enterprises and Tube City. Fairfield maintains a separate account which is used to pay employees and vendors. BSRR bills its customers separately from Fairfield, and it does not share any of its common carrier revenues with Fairfield. Both entities maintain separate rule books, separate safety programs, and separate payrolls.

Further, the evidence demonstrates that Willard himself considers the companies to be separate and distinct. Willard is a labor union member, and as a Fairfield employee, he is represented by the United Steel Workers of America, and its contract is governed under the National Labor Relations Act. On the other hand, BSRR train operating personnel are represented by the United Transportation Union and the Brotherhood of Locomotive Engineers, and their collective bargaining agreements are governed by the Railway Labor Act.

Likewise, the district court found and the parties do not dispute that at the time of Willard's alleged injury, the Occupational Safety & Health Administration ("OSHA") regulated Fairfield train operations, while the FRA regulated BSRR

12

train operations. Moreover, the district court also found undisputed that Fairfield's employees are eligible to receive Alabama state unemployment benefits, rather than benefits under the Railroad Unemployment Insurance Act, and that Fairfield's employees pay employment taxes under the Social Security Act, not the Railroad Retirement Act, as is the case with BSRR's employees.

Willard fails to show that Fairfield and BSRR do not, in reality, constitute separate and distinct corporate entities. Accordingly, we conclude that Fairfield is not the alter ego of BSRR, and the district court properly granted summary judgment to BSRR.

B. Rule 60(b) Motion

Willard contends that the district court erred in denying his Rule 60(b) motion based upon a February 2006 letter from the FRA which explains that, despite prior indications from the FRA that it would not assert jurisdiction over Fairfield's operations at Fairfield, the FRA now has decided that Fairfield is subject to all FRA regulations and railroad safety statutes. Willard asserts that the FRA letter is "newly discovered evidence" warranting relief from the district court's prior summary judgment order. We disagree with Willard's contention.

In order to be entitled to relief based upon newly discovered evidence under Rule 60(b)(2), Willard must show that (1) the evidence is newly discovered since

13

the trial; (2) he exercised due diligence to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result. *Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1309 (11th Cir. 2003). "A motion for a new trial under Rule 60(b)(2) is an extraordinary motion and the requirements of the rule must be strictly met." *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1316 (11th Cir. 2000) (citation omitted). Willard cannot meet these requirements because the FRA letter is not evidence that would produce a new result.

The FRA's statutory jurisdiction is broader than FELA "common carrier" jurisdiction. Prior to 1988, the FRA's jurisdiction was limited to "common carrier" railroads. In 1988, Congress amended the Boiler Inspection Act and the Safety Appliance Act to expand the FRA's statutory jurisdiction to include all railroads, not just common carrier railroads. *See* 49 C.F.R., Part 209, App. A. However, the fact that the FRA exerts jurisdiction over a railroad carrier does not change a private carrier into a common carrier subject to the FELA. *See, e.g., Mickler*, 13 F.3d at 187-88 (noting that the purpose of the 1988 Act was to continue and expand federal regulation of railroad safety; commenting that the substitution of "railroad" for "common carrier" was done to provide uniformity in

14

the safety requirements; and stating that the FELA continues to apply only to common carriers engaging in interstate commerce).

Furthermore, Willard cannot demonstrate how the FRA letter changes the facts that support our conclusion that Fairfield is a private carrier. As noted earlier, the evidence demonstrates that Fairfield meets the classic definition of a private carrier because it performs rail service pursuant to individual contracts with in-plant customers. Fairfield's rail service for the in-plant customers is performed only within Fairfield Works's boundaries. Tube City and Fritz pay Fairfield directly for its services. Fairfield neither receives nor collects rate divisions from any common carrier railroad, and it does not hold itself out to the public for a fee. All these facts support the conclusion that Fairfield is a private carrier, not a common carrier subject to the FELA. Nothing in the FRA letter changes this conclusion. Accordingly, we conclude that the district court did not abuse its discretion in denying Willard relief pursuant to Rule 60(b).

## V. CONCLUSION

The district court did not err in granting summary judgment to the defendants on the basis that Fairfield is not a common carrier and is not the alter ego of BSRR. Moreover, the district court did not abuse its discretion in denying Willard's Rule 60(b) motion because the FRA letter did not constitute "newly

discovered evidence" which would entitle Willard to relief from the district court's prior summary judgment order. Accordingly, we affirm the district court's orders.

**AFFIRMED.** [4]

---

[4] Appellees/defendants filed two motions with this court: a motion to strike portions of appellant's reply brief that raise new arguments and a motion to strike appellant's supplemental authority. In his reply brief, Willard argues that BSRR is his employer under the FELA, and he argues a new "right of control" theory. Willard did not raise this issue in his initial appellate brief; rather, he argued that Fairfield was the alter ego of BSRR. Because Willard did not clearly argue a right of control theory in his initial appellate brief, we will not consider it, and we grant the motion to strike this portion of Willard's reply brief. *See KMS Rest. Corp. v. Wendy's Int'l., Inc.* 361 F.3d 1321, 1328 n.4 (11th Cir. 2004). We deny the motion to strike appellant's supplemental authority because the supplemental authority is the FRA letter which is the basis for Willard's Rule 60(b) motion.